IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                Civil Action No. 1:13CV215
                                            (STAMP)

CONSOL ENERGY, INC. and
CONSOLIDATION COAL COMPANY,

      Defendant.


**MEMORANDUM OPINION AND ORDER
CONFIRMING THE PRONOUNCED ORDER OF THE COURT
DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT
REGARDING LIABILITY,
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' MOTION IN LIMINE NO. 1
FOR BIFURCATION OF THE CLAIM FOR PUNITIVE DAMAGES AND
MEMORANDUM IN SUPPORT**

I.  Procedural History

This action was filed by the plaintiff, the United States Equal Employment Commission ("EEOC"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In the complaint, EEOC is seeking a permanent injunction and monetary relief for the charging party, Beverly R. Butcher, Jr. ("Butcher"). EEOC alleges that the defendants, Consol Energy, Inc. ("Consol Energy") and Consolidation Coal Company ("Consolidation Coal")(collectively, "the defendants"), instituted practices that denied Butcher a religious accommodation.

EEOC filed a motion for partial summary judgment regarding liability. The defendants also filed a motion for summary

judgment.  Those motions were fully briefed.  Additionally, both parties have filed multiple motions in limine.  However, before this Court entered an opinion on those motions, this Court held a pretrial conference with all parties in attendance.  At that hearing, this Court informed the parties that it was denying both motions for summary judgment and granting the defendants' motion in limine No. 1, regarding bifurcation of EEOC's claim for punitive damages.  This opinion sets forth those findings in more detail.

## II.  Facts

EEOC avers in its complaint that Butcher was employed at the Robinson Run Mine, located in Marion County, West Virginia and operated by the defendants, in 2012 when a biometric hand scanner was installed for tracking employee time and attendance.  EEOC further alleges that Butcher is an Evangelical Christian and has a "genuinely held religious belief" that he is not permitted to submit either of his hands for scanning because such scanning would make him take on the Mark of the Beast.[1]

---

[1]   The theological roots of [this] asserted belief lie in the New Testament's Book of Revelation, which, in its thirteenth chapter, refers to two beasts. The Book of Revelation prophesies that those who receive the mark of the second beast shall be condemned to eternal damnation. See Book of Revelation 14:9-11. This mark is characterized as a number required for buying and selling. See id. at 13:17; see also Stevens v. Berger, 428 F.Supp. 896 (E.D.N.Y. 1977) (providing an extensive discussion of the theological and historical origins of the "mark of the beast").

EEOC alleges that Butcher informed the defendants of his belief concerning the Mark of the Beast multiple times and suggested two alternatives–that he continue to manually submit his time and attendance or use a time clock. However, EEOC asserts that the defendants only offered Butcher the alternative of using his left hand palm up instead of his right hand palm down. EEOC further contends that the defendants declined to accommodate Butcher's religious exemption request even though the defendants allowed exemptions for two other employees who had missing fingers. Thereafter, EEOC asserts that Butcher involuntarily retired because the defendants would not allow his religious exemption.

A.   Plaintiff's Motion for Partial Summary Judgment Regarding Liability

In its motion for summary judgment, EEOC first reviews the facts stated above. EEOC adds statements from employees of the defendants that, EEOC argues, shows that the defendants knew Butcher's beliefs were genuinely held, that Butcher only retired because they would not accommodate his request, and that there were alternatives to the hand scanner. Additionally, EEOC contends that Recognition Systems Incorporated ("RSI"), the scanner system vendor, had convinced the defendants that the Mark of the Beast could only occur if the right hand was scanned and thus the defendants attempted to change Butcher's beliefs and implemented a

_____

Baltgalvis v. Newport News Shipbuilding Inc., et al., 132 F.Supp.2d 414, 415 (E.D. Va.) aff'd, 15 Fed.App'x 172 (4th Cir. 2001).

policy wherein only physical impairments would exempt an employee from the use of the hand scanner. Otherwise, EEOC asserts, discharge was eminent for persons such as Butcher who did not have a physical impairment and refused to use the hand scanner.

EEOC argues that a _prima facie_ case for denial of religious accommodation exists in this action. First, EEOC contends that Butcher held a bona fide religious belief that he cannot scan either of his hands, which both officials involved in the decisions concerning Butcher's request supported. Second, EEOC argues that Butcher informed the defendants of his belief on multiple occasions. Finally, EEOC asserts that Butcher was given an ultimatum of either scanning his hand or facing discharge under the policy implemented by the defendants because he did not have a physical impairment. EEOC contends that Butcher was forced to retire because the only other option was discharge and thus a constructive discharge occurred. EEOC asserts that Butcher was not offered a reasonable alternative because (1) he believed that neither hand could be scanned and (2) the defendants knew that Butcher could, in the alternative, have keyed in his employee code. Additionally, EEOC contends that the defendants' argument that Butcher should have stayed, taken the disciplinary charges, and then filed a union grievance is meritless because (1) Butcher had filed a UMWA grievance which was denied by the defendants and later withdrawn by the UMWA and (2) filing a grievance before he retired

would have been futile. EEOC argues that the actions by the defendants were deliberate as they had full knowledge of Butcher's beliefs and alternatives that could have been implemented. Finally, EEOC asserts that Consol Energy is statutorily the employer as it was the parent company of Consolidation Coal and dominated the operations of the subsidiary, Consolidation Coal.

In response, the defendants assert that the following facts are adverse to the facts set forth by EEOC: (1) Butcher refused to use the scanning system at all, which included typing in his employee number, and thus the same exemption given to the two other employees could not be employed; (2) Butcher did not believe that the scanning system would give him the Mark of the Beast but rather would lead to technology that would; (3) Butcher refused to speak with his pastor or have his pastor write a letter discussing that the scanner could not be used on the left hand; (4) Butcher used a helmet which had a sensor on the forehead, which is used for monitoring the location of persons in the mines; (5) Butcher had filed grievances previously and was aware of the union grievance process; (6) Butcher's grievance that was filed after he retired was denied because it was untimely as Butcher had entered retirement; and (7) the scanning system was not implemented until a week and a half after Butcher decided to retire and thus he had ample time to file a grievance before that time and was never actually subjected to discipline.

Further, the defendants argue that Butcher's request to manually clock in was unreasonable and would have placed an undue hardship on the defendants. Finally, the defendants argue that Consol Energy was not the statutory employer of Consolidation Coal. The defendants contend that Butcher's personnel files show he was an employee and received his paycheck from Consolidation Coal; Butcher received all daily directives and assignments from Consolidation Coal; Consolidation Coal had a separate and distinct human resources department that dealt with employment decisions; and under the law, Consol Energy is allowed to set forth general policies without piercing the corporate veil, which it did.

In reply, EEOC argues that the relevant issue is whether Butcher objects to the scanner, not why he objects, and thus it is only relevant that he has a sincerely held belief that using the hand scanner is objectionable. EEOC also contends that the beliefs of Mrs. Butcher are inconsequential and further that the use of a sensor on a helmet is different because it is not a scanner. Additionally, EEOC asserts that Butcher's religious beliefs did not need to be consistent with the beliefs of others in his religion, as long as the belief is sincerely held. EEOC also reiterates its arguments that the defendants' actions were deliberate and that they did not provide a reasonable alternative. EEOC further argues that any grievance filed by Butcher would have failed because the collective bargaining agreement in place does not require religious

accommodations and thus the United Mine Workers of America ("UMWA") would have withdrawn any claim by Butcher on the subject.

As to the defendants' factual assertions, EEOC contends that: (1) Butcher did acquire a letter from his pastor and that the only reason a letter was requested was to try to persuade Butcher to change his mind; (2) Butcher was never asked if he agreed with the RSI letter; (3) the defendants knew of the key pad option in July of 2012, Butcher didn't know of such an option before he retired, and Butcher only filed a grievance after he retired upon finding out about the option; and (4) the defendants have adduced no evidence that the keypad system, the manual system, or a time clock would create an undue hardship. Finally, EEOC argues that Consol Energy is a statutory employer because: (1) the employees involved in the decisions leading to this action were and are still employees of Consol Energy, either as officers or management; (2) the decision to implement hand scanning was made by Consol Energy; (3) the hand scanner policy at issue was implemented by Consol Energy employees; and (4) Butcher is considered a retiree of Consol Energy.[2]

---

[2]EEOC uses the name "Consol" instead of "Consol Energy" or "Consolidation Coal" when referring to one of the defendants. This Court will assume, based on its argument, that EEOC is referring to Consol Energy and thus the Court has used "Consol Energy" throughout the summary of this argument.

B.  Defendants' Motion for Summary Judgment

The defendants concede in their motion for summary judgment that they "assume" Butcher has a bona fide religious belief that conflicts with use of the scanner and that he informed his employer of this belief.  Further, the defendants set forth their arguments that Butcher was never disciplined and chose to retire before all avenues of accommodation could be explored or before he filed a grievance.  Additionally, the defendants contend that the alternatives set forth by Butcher would result in more than de minimis hardship to the defendants because they had already spent time and money on the new system, no system was in place for a time clock, and the old manual system had cost them millions of dollars in overpay.  The defendants also assert that Butcher has failed to mitigate his damages because he could have obtained employment in the coal industry and did not do so because he wanted to keep his pension benefits.  Finally, the defendants argue that punitive damages should not be awarded as they did not act with malicious motive or a conscious or deliberate disregard of Butcher's rights. The defendants assert that they offered a reasonable accommodation and Butcher decided to retire instead.

In response, EEOC reiterates several of its arguments from its motion for summary judgment.  However, for the first time, EEOC contends that the same day Butcher was given the "ultimatum", the two employees with fingers missing were given the option of typing

in their employee number. Additionally, EEOC reiterates that Butcher did not need to be actually disciplined because he was constructively discharged (1) by the denial of the exemption and (2) because he was not required to make futile grievance requests. Further, EEOC asserts that the defendants have not shown that an undue hardship would result by allowing an accommodation for Butcher. EEOC contends that Butcher never stated he would not type in his number and that typing in the number would result in little cost to the defendants. EEOC also asserts that the defendants have made no effort to quantify the costs that would result from allowing Butcher use a time clock or the manual system.

EEOC also argues that Butcher has mitigated his damages as he has been fully employed since October 22, 2012. EEOC avers that Butcher sought employment in the coal mining industry and in the heavy equipment operating industry as those wages would have been comparable to what he was making before. Further, EEOC asserts that the defendants do not have any proof the Butcher failed to apply for any coal industry jobs that Butcher was aware of or that there were available coal industry jobs between August 2012 and October 2012. In addition, EEOC contends that under Fourth Circuit precedent, once Butcher received a lower paying job he was free to stay in that position and was not required to continue searching for higher paying employment. Furthermore, EEOC argues that the defendants led Butcher to believe that he would not be hired by

unionized mines because he was a retiree who was drawing a pension and thus Butcher's belief that he would not be hired by those mines was reasonable.  Finally, EEOC contends that Butcher is entitled to punitive damages as the defendants' employees were aware of the Title VII implications of Butcher's request and did not provide him a reasonable accommodation.

In their reply, the defendants reiterate previous arguments they have made throughout the briefing of these two motions.

C.    Defendants' Motion in Limine: Bifurcation

The defendants assert that bifurcation of the claim for punitive damages is required as the defendants would otherwise be unfairly prejudiced if the jury were to consider the defendants' finances and corporate wealth at the same time it considers liability and/or compensatory damages.  Further, the defendants argue that such evidence has no relevance at the liability stage. Additionally, the defendants assert that EEOC will not be prejudiced by bifurcation because it will have no impact on their presentation of the liability claims.

In response, EEOC argues that the defendants have only provided a generalized, speculative assertion that they will be prejudiced by non-bifurcation which is not enough to meet their burden.  Further, EEOC contends that bifurcation is unwarranted as the defendants are a well-known corporation and most jury members would have some familiarity with defendants' size and presumed

wealth.  EEOC argues that even with that knowledge, the defendants have not shown that the jury would be unable to follow an instruction from the Court to not consider such information. Additionally, EEOC asserts that the defendants' wealth will be at issue if the defendants are allowed to make the argument that the alternatives that Butcher offered, other than scanning his hands, are too costly.

For the reasons that follow, this Court finds that EEOC's motion for partial summary judgment regarding liability and the defendants' motion for summary judgment should be denied.

## III.  <u>Applicable Law</u>

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u> at 256.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

A. <u>Motions for Summary Judgment</u>

### 1. <u>Religious Discrimination</u>

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2. In a Title VII action for employment discrimination based upon the charging party's religion, the plaintiff must show either that the charging party suffered disparate treatment as a result of his religion or that the employer failed to accommodate his religious practices.

12

<u>Chalmers v. Tulon Co. of Richmond</u>, 101 F.3d 1012, 1017 (4th Cir. 1996).

The United States Court of Appeals for the Fourth Circuit has set forth a burden shifting scheme wherein the plaintiff must first establish a <u>prima facie</u> religious accommodation claim. <u>EEOC v. Firestone Fibers & Textiles Co.</u>, 515 F.3d 307, 312 (4th Cir. 2008). To establish a <u>prima facie</u> religious accommodation claim, a plaintiff must establish that: (1) he has a bona fide religious belief that conflicts with an employment requirement; (2) he informed the employer of this belief and requested an accommodation thereof; and (3) he was disciplined for failure to comply with the conflicting employment requirement. <u>Id.</u> at 1019. With respect to the third prong, the plaintiff may prove that the charging party was disciplined if he was not hired or promoted, fired, or otherwise discriminated against for failure to comply with the conflicting employment requirement. <u>See e.g.</u> <u>Henegar v. Sears, Roebuck & Co.</u>, 965 F. Supp. 833, 834 (N.D. W. Va. 1997).

Once a plaintiff establishes a <u>prima facie</u> religious accommodation claim, the burden then shifts to the employer to show that it could not reasonably accommodate the employee's religious needs without undue hardship. <u>Firestone Fibers</u>, 515 F.3d at 312. The employer must then show either (1) that it provided the employee with a reasonable accommodation or (2) that such an accommodation was not provided because it would have caused an

undue hardship at "more than a <u>de minimis</u> cost." <u>Id.</u>, <u>see</u> <u>also</u> <u>Trans World Airlines v. Hardison</u>, 432 U.S. 63, 84 (1977). Further, an employer's duty to accommodate does not require the employer to accept an employee's proposed accommodation if its own accommodation is otherwise adequate. <u>Ansonia Bd. of Educ. v. Philbrook</u>, 479 U.S. 60 (1986).

This Court will assume, for purposes of this summary judgment motion, that the first two requirements of a <u>prima facie</u> religious accommodation claim have been met in this action because this Court can dispose of these motions without considering the first two requirement. This is so because this Court finds that there are material issues of fact that surround the third requirement–whether or not Butcher was disciplined for failure to comply with the defendants' hand scanning policy.

Additionally, the parties are in disagreement as to whether or not the defendants provided a reasonable accommodation or were unable to provide certain accommodations because those accommodations would result in an undue hardship. As this Court has found below that there are genuine issues of material fact regarding proof of a <u>prima facie</u> religious accommodation claim, this Court does not need to undergo an analysis of the second <u>Firestone Fibers</u> step, analyzing the reasonable accommodation offered or not offered by the defendants.

EEOC contends that Butcher was constructively discharged for failing to use the hand scanner at Robinson Run Mine. EEOC asserts that constructive discharge occurred because of the disciplinary policy that was implemented by the defendants' supervisory staff which left Butcher with no option other than to retire in protest. The defendants, however, argue that Butcher did not retire in protest and, by retiring, did not allow the defendants to remedy the situation.

EEOC notes in its motion for partial summary judgment that the Fourth Circuit has continued to apply the two prong analysis for constructive discharge, which includes a deliberateness requirement, despite the Supreme Court's holding in <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129 (2004). As noted, <u>Suders</u> only requires the objective intolerability prong be proven where the underlying claim does not require proof of discriminatory intent. <u>Id.</u>; <u>see</u> <u>Whitten v. Freds, Inc.</u>, 601 F.3d 231, 248-49 (4th Cir. 2010). However, the Fourth Circuit in <u>Whitten</u> made it apparent that it was aware of the possible tension with <u>Suders</u> but would continue to apply the deliberateness element as other Fourth Circuit panels had done post-<u>Suders</u>. <u>Whitten</u>, 601 F.3d at 251, n. 8. Thus, although EEOC objects to the use of the deliberateness requirement, this Court must follow Fourth Circuit precedent which continues to require such a showing. <u>Id.</u>; <u>see also</u> <u>Carter v. Centura College</u>, Civil Action No. 2:10-00907-CWH, 2012 WL 638800,

at *11 (D.S.C. Feb. 27, 2012)(finding that "[s]ince the Fourth Circuit Court of Appeals has not interpreted <u>Suders</u> to have dispensed with the deliberateness requirement, the plaintiff must satisfy this element.").

Thus, "[i]n this circuit, an employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" <u>Whitten</u>, 601 F.3d at 248 (citing <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343, 1353-54 (4th Cir. 1995) (internal quotation marks omitted)). "A constructive-discharge plaintiff must therefore allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions." <u>Id.</u> (internal quotation marks and citations omitted). In order to prove the first element, deliberateness, the plaintiff must prove "'that the actions complained of were intended by the employer as an effort to force the employee to quit.'" <u>Id.</u> (citation omitted).

Additionally, "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." <u>Johnson v. Shalala</u>, 991 F.2d 126, 132 (4th Cir. 1993); <u>see also</u> <u>Crabill v. Charlotte Mecklenburg Bd. of Educ.</u>, 423 F. App'x 314, 324 (4th Cir. 2011).

For instance, the Fourth Circuit has found that sufficient evidence of a constructive discharge had been adduced to survive a summary judgment motion where the plaintiff provided evidence that the defendant was aware of a reasonable accommodation but did not offer such an accommodation to the plaintiff. Crabill, 423 F. App'x at 324. In Crabill, the plaintiff, a former high school guidance counselor, prematurely retired after she was refused a reduction in her case load by the school's principal and also misinformed by the school board of possible middle school and high school positions that might be available for transfer as an accommodation. Id. at 317-19. Although the court considered the refusals regarding the case load, the court also noted that the school board had learned of five or six high schools, two middle schools, and a new high school that did not yet have a high school class, to which the plaintiff could have possibly requested a transfer. Id. at 319-20. The school board representative, however, only informed the plaintiff of one high school position that was available for transfer. Id. at 319. When the plaintiff was unable to secure that position, she prematurely retired. Id. at 320. Given such facts, the court found that a genuine dispute of material fact had been generated as to the plaintiff's claim of constructive discharge. Id. at 324.

In this action, the parties disagree as to what should have been offered to Butcher and whether or not Butcher was actually

willing to use the hand scanner at all—including the punch-in method.  As stated previously, the hand scanner may be overridden so that an employee is not required to scan either hand but may punch-in his number.  In mid-to-late July of 2012, this method was offered to two employees at the Robinson Run Mine who had physical impairments which made the hand scanner unusable except with the use of the punch-in method.  An initial meeting with Butcher had taken place in June, 2012, before the punch-in method was known to either of the two employees who directly dealt with Butcher, Michael Smith and Chris Fazio.  However, two meetings with Butcher occurred in August of 2012, after Smith and Fazio obtained that knowledge, one of which ended in Butcher retiring prematurely.

Accordingly, there is not a question as to whether the defendants knew of the punch-in method option at the time that Butcher retired.  However, the parties disagree as to whether or not Smith and Fazio were aware that such an option would be accepted by Butcher and if such an option could have been offered. Smith has testified that he did not think that Butcher would use the system at all and had only considered offering Butcher the left hand, palm-up option.  Further, although a mere statement of speculation, Butcher has testified that it would be reasonable for Smith to believe that he would not use the machine at all. Butcher, however, has testified that he would have used the punch-in method and filed a union grievance regarding the fact that the

method was offered to two other employees but not to him. Thus, there is a genuine issue of material fact as to whether a jury would find that the refusals by the defendants amounted to a constructive discharge.

Further, the parties disagree as to whether Butcher's retirement was "in protest." Butcher has testified in his deposition that he was not thinking about retiring in 2012, specifically at the last meeting with Smith and Fazio on August 10, 2012. On the other hand, Butcher testified that he had mentioned retiring in the first meeting with Smith and Fazio regarding his objection to using the hand scanner. Butcher testified that he had stated at the first meeting with Smith and Fazio that if he was forced to scan his hand he would likely have to retire. However, Smith and Fazio testified that they believe that Butcher had stated in the final meeting on August 10, 2012, that he was thinking about retiring in a year anyway and that he might as well retire now. Thus, there is also a genuine issue of material fact as to whether or not Butcher's retirement was forced by the implementation of the hand scanning disciplinary policy and the actions taken by the defendants.

2. Parent/Subsidiary

EEOC argues that both defendants should be considered Butcher's former employers for purposes of this litigation as they are both "statutory employers" under Title VII. The defendants,

however, contend that the two entities, Consolidation Coal and Consol Energy, are separate and thus Consolidation Coal was the only employer of Butcher.

"A parent company is the employer of a subsidiary's personnel only if it [1] controls the subsidiary's employment decisions or [2] so completely dominates the subsidiary that the two corporations are the same entity." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir. 1987). Under the first option, in determining the amount of control a parent corporation has, courts may consider whether the parent corporation has "hired and fired the subsidiary employees[;] routinely shifted them between the two companies[;] [ ] supervised their daily operations[;]" and/or "authorized [their] layoffs, recalls, and promotions". Id. at 981. Under the second option, where a parent corporation completely dominates the subsidiary, a parent corporation will be found to be liable for actions taken by the subsidiary if it has commingled funds and assets, undercapitalized the subsidiary, disregarded corporate formalities, authorized the subsidiary's purchases over a certain monetary amount, or managed the finances of the subsidiary. Id. at 981 (citation omitted).

However, "(o)wnership of a controlling interest in a corporation entitles the controlling stockholder to exercise the normal incidents of stock ownership, such as the right to choose directors and set general policies, without forfeiting the

protection" afforded a parent corporation  _Id._ at 980-81 (citation omitted).  Thus, "the courts have found parent corporations to be employers only in extraordinary circumstances." _Id._ at 980.

The parties are not in dispute as to the fact that Butcher was employed by Consolidation Coal at the time the alleged incidents regarding his religious accommodation occurred.  Further, the parties agree that Samuel Johnson, the Vice President of Human Resources for Consol Energy at the time of the alleged incident, was an employee of Consol Energy.

The parties contradict each other as to Smith and Fazio's employer at the time the underlying issues arose.  EEOC contends that Smith and Fazio, the two employees who dealt directly with Butcher, are Consol Energy employees.  On the other hand, the defendants assert that Smith and Fazio were employed at the time by Consolidation Coal, not Consol Energy, and that Consol Energy is just a trademark used on certain documents or referred to by employees who are actually employed by Consolidation Coal. Further, the parties do not agree on the actual control that Consol Energy had over the decisions made by Smith and Fazio.  At the time the underlying incident occurred, Smith testified that he reported to Chuck Shaynak, Senior Vice President of Consol Energy.  Fazio testified that he reported to Smith and Tom Hudson, the director of Human Resources of Consol Energy.  Additionally, Johnson testified that both Hudson and Fazio work under him.

In addition, Smith testified that he wrote and implemented the hand scanning disciplinary policy by himself and that Consol Energy did not direct him to do so. Hudson testified, however, that he helped author the disciplinary policy, along with Fazio, and that Johnson authorized the implementation of the policy.

Because of the inconsistencies just cited, this Court cannot determine whether or not both Consolidation Coal and Consol Energy should be considered Butcher's employers for the purposes of this litigation. There are genuine issues of material fact as to which of the employees involved in the underlying incident were employed by Consol Energy or Consolidation Coal. Further, the issue of who wrote and implemented the hand scanning disciplinary policy raises questions as to who was reporting to whom, and thus who was reporting to either the parent or subsidiary at the time the underlying incident took place. Accordingly, this is an issue for the jury.

> 3. <u>Punitive Damages</u>

In order to be awarded punitive damages, EEOC must show that the defendants' alleged discriminatory act was done with malice or reckless indifference to Butcher's federally protected religious rights. <u>See</u> 42 U.S.C. § 1981a(b)(1). The defendants have argued that a reasonable jury could not find that punitive damages should be awarded in this case as the defendants provided Butcher with a reasonable accommodation and in response he retired. As stated

above, this Court cannot at this time reach the question as to whether or not a reasonable accommodation was given as there are still genuine issues of material fact remaining as to constructive discharge and whether a <u>prima facie</u> religious accommodation claim has been made by EEOC.  Accordingly, there are still genuine issues of material fact remaining as to whether or not a reasonable juror could find that Butcher is entitled to punitive damages.

      4.   <u>Back Pay and Front Pay</u>

As this Court has denied summary judgment for both parties, the Court will defer ruling on EEOC's assertion that Butcher is entitled to back and/or front pay.  <u>Franks v. Bowman Transportation Co.</u>, 424 U.S. 747, 763-64 (1976)(upholding a lower court's instruction that the jury not consider "back pay, pre-judgment interest, or reinstatement or front pay, because those equitable remedies are vested within the Court's discretion.").  Further, this Court reminds the parties that it will hold a separate hearing, if needed, after the jury trial has been completed in this action.

B.   <u>Defendants' Motion in Limine</u>

Bifurcation of trials is intended to further convenience, avoid delay and prejudice, and to serve the ends of justice.  It is appropriate only when the court believes that separation will achieve the purposes of the rule. 9 C. Wright & A. Miller, Federal Practice and Procedure (1971), sec. 2388.

The defendants argue that they will be prejudiced if the jury were to consider evidence that would support the EEOC's claim for punitive damages at the same time it considered the evidence for the liability and compensatory damages claims. EEOC, however, asserts that bifurcation would be frivolous because the defendants are well-known entities in the area from which the jury pool would be selected and evidence of the defendants' wealth will be at issue if the defendants are allowed to make the argument that the alternatives suggested by Butcher were too costly to implement.

This Court finds and reiterates its finding from the pre-trial conference that EEOC's claim for punitive damages should be bifurcated from the other issues that will be addressed at trial. This Court noted during the pre-trial conference that it believed that there are other avenues that can be used to adduce evidence as to whether or not the defendants had the means to implement the alternatives suggested by Butcher (such as inquiring of the corporate individuals as to why such alternatives would be an undue hardship). However, this Court further notes that determinations as to what evidence may be admitted during the initial liability phase of trial versus the punitive damages phase, or even the back pay and front pay hearing that will be held on a later date, are not being made in this opinion.

Accordingly, this Court sets forth the following procedure for trial in this action given the granting of the defendants' motion in limine to bifurcate the issue of punitive damages.

During the first phase of trial, the issues of liability should be determined and evidence of wealth or financial condition of the defendant will not be permitted. The issue of compensatory damages will be determined in the first phase. EEOC may mention in its opening statement that it is seeking punitive damages but shall not elaborate upon that contention. At the close of EEOC's case, the Court will then determine whether EEOC has made a <u>prima facie</u> case for punitive damages.

A special verdict form will be used to determine whether the defendants are liable for compensatory damages only, or in addition, are also liable for punitive damages. If the jury determines in the first phase that punitive damages also should be awarded, evidence of the appropriate amount, including that of defendants' wealth or financial condition where relevant, will be permitted in the second phase. In other words, only if EEOC makes a <u>prima facie</u> case for punitive damages and only if the jury determines that punitive damages should be awarded, will this Court then reconvene the jury to hear evidence as to the financial condition or wealth of the defendant in order to arrive at a verdict as to the amount of such punitive damages. <u>Perrine v. E.I. du Pont de Nemours & Co.</u>, 694 S.E.2d 815, 919-20 (W. Va.

2010)(Ketchum, J., dissenting in part and concurring in part)(citing <u>Transportation Insurance Co. v. Moriel</u>, 879 S.W.2d 10 (Texas 1994))(suggesting the approach cited above by this Court); <u>Rohrbaugh v. Wal-Mart Stores, Inc.</u>, 572 S.E.2d 881 (W. Va. 2002)("Generally, trial courts are permitted broad discretion in managing their cases and deciding bifurcation matters . . . . [a] trial court [may decide] to bifurcate the amount of punitive damages in order 'to prevent the jury from being influenced on the substantive claim by evidence of [defendant's] enormous wealth . . . ."); <u>Rupert v. Sellers</u>, 368 N.Y.S.2d 904 (1975).

### V. <u>Conclusion</u>

Based on the analysis above, EEOC's motion for partial summary judgment (ECF No. 67) is DENIED. Further, the defendants' motion for summary judgment (ECF No. 69) is DENIED. Finally, the defendants' motion in limine No. 1 for bifurcation of the claim for punitive damages (ECF No. 78) is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     January 7, 2015

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE