IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                                Civil Action No. 1:13CV215
                                              (STAMP)

CONSOL ENERGY, INC. and
CONSOLIDATION COAL COMPANY,

      Defendants.


## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING DEFENDANTS' MOTION FOR A NEW TRIAL AND DENYING DEFENDANTS' MOTION TO AMEND THIS COURT'S FINDINGS AND CONCLUSIONS

This is a Title VII religious discrimination case. The plaintiff, the United States Equal Employment Opportunity Commission ("the EEOC"), brought this civil action on behalf of Beverly R. Butcher, Jr. ("Butcher"), alleging that the defendants, CONSOL Energy, Inc. ("CONSOL") and Consolidation Coal Company ("Consolidation"), denied Butcher a religious accommodation to their policy requiring employees to clock-in and clock-out with a biometric hand scanner. After a trial, the jury returned a verdict in favor of the EEOC and awarded $150,000 in compensatory damages to Butcher. This Court then, after an evidentiary hearing, awarded back pay and front pay damages in the amount of $436,860.74 and issued a permanent injunction requiring the defendants to provide

religious accommodations to their hand scanner policy and to provide Title VII training to employees. The defendants then filed a renewed motion for judgment as a matter of law under Rule 50(b), a motion for a new trial under Rule 59, and a motion to amend this Court's findings and conclusions under Rule 59. For the following reasons, the defendants' motions are denied.

## I. Background

Butcher worked at the Robinson Run coal mine for 35 years. ECF No. 141 at 41. In 2012, the defendants announced a new policy requiring all employees to clock-in and clock-out by using a biometric hand scanner. Butcher objected to the hand scanner policy, stating that he believed it was part of an identification system and collection of personal information that would be used by the Christian Antichrist, as described in the New Testament Book of Revelation, to identify his followers with the "mark of the beast." Butcher requested a religious exemption from the hand scanner policy, stating that he feared damnation from its use. Although the defendants had developed a method of bypassing the hand scanner for miners who were physically incapable of scanning their hands, the defendants refused to grant Butcher an exception from scanning his hand, and provided him with a copy of their progressive disciplinary policy that included possible discharge after four missed hand scans. After being told that the defendants would

enforce the disciplinary policy against him if he refused to scan his hand, Butcher retired.

The EEOC filed this civil action on Butcher's behalf, claiming that the defendants' failure to provide a religious accommodation to Butcher amounted to religious discrimination under Title VII. This Court bifurcated the trial and determination of liability and compensatory damages from a determination of back pay and front pay damages, which must be decided by this Court in equity. The jury returned a verdict in favor of the EEOC. Specifically, the jury found: (1) that CONSOL was Butcher's employer; (2) that Butcher had a "sincere religious belief that conflicted with an employment requirement"; (3) that Butcher "informed his employer of this belief"; (4) that Butcher "was subjected to an adverse employment action . . . by being . . . constructively discharged by his employer for his refusal to comply with the conflicting employment requirement"; (5) that the defendants did not provide Butcher a reasonable accommodation; and (6) that the accommodations proposed by the EEOC at trial would not have "resulted in more than a de minimis cost" to the defendants. ECF No. 125. The jury awarded $150,000 in compensatory damages.

This Court then held an evidentiary hearing to determine back pay and front pay damages. The parties presented testimony from experts and other witnesses and legal argument. This Court concluded that the pension benefits Butcher had received since

retiring were a collateral source and should not be used to offset damages. Based on that conclusion, this Court awarded $436,860.74 in back pay and front pay damages, including lost pension benefits. The defendants then filed a renewed motion for judgment as a matter of law under Rule 50(b), a motion for a new trial under Rule 59, and a motion to amend this Court's findings and conclusions under Rule 59.

## II.  Discussion

### A.  Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 permits a court to enter judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "Judgment as a matter of law is properly granted if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 391 (4th Cir. 2014) (internal quotation marks omitted).  On a renewed motion for judgment as a matter of law, the court considers whether the jury's findings are supported by substantial evidence.  Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999). In reviewing the evidence, the court may not weigh the evidence or make credibility determinations, but must view the evidence in the light

most favorable to the nonmoving party. <u>Reeves v. Sanderson Plumbing Prod. Inc.</u>, 530 U.S. 133, 150 (2000); <u>Fontenot v. Taser Int'l, Inc.</u>, 736 F.3d 318, 332 (4th Cir. 2013).

The defendants cites two grounds for why they are entitled to judgment as a matter of law: (1) that the EEOC failed to present sufficient evidence to state a prima facie case of religious discrimination; and (2) that there was insufficient evidence to support the jury's finding that CONSOL was Butcher's employer.

1. <u>The EEOC's Prima Facie Case</u>

Title VII obligates employers "to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." <u>EEOC v. Firestone Fibers & Textiles Co.</u>, 515 F.3d 307, 312 (4th Cir. 2008) (internal quotation marks omitted). For a prima facie case of religious discrimination, a plaintiff must prove that: (1) "he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." <u>Id.</u> (alteration in original).

"If the employee establishes a prima facie case, the burden then shifts to the employer to show that it could not [reasonably] accommodate the plaintiff's religious needs without undue hardship." <u>Id.</u> (internal quotation marks omitted). "To satisfy its burden, the employer must demonstrate <u>either</u> (1) that it

5

provided the plaintiff with a reasonable accommodation for his or her religious observances <u>or</u> (2) that such accommodation was not provided because it would have caused an undue hardship – that is, it would have result[ed] in more than a <u>de minimis</u> cost to the employer." <u>Id.</u> (emphasis and alterations in original) (internal quotation marks omitted).

The defendants argue that the EEOC failed to prove two elements of its prima facie case of discrimination. First, the defendants argue that there is insufficient evidence to support the jury's finding that the hand scanner policy conflicted with Butcher's sincere religious belief. They argue that Butcher's "religious concern dealt with the unknown future of technology," and that the hand scanner policy did not presently conflict with Butcher's religious belief. ECF No. 179 at 4. However, there was sufficient evidence to support a finding that Butcher believed the hand scanner policy was immoral because it was part of an identification system and collection of personal information that would be used by the Christian Antichrist, and that participation in this system of identification was a showing of allegiance to the Antichrist. ECF No. 141 at 52-54, 56-7; <u>Revelation</u> 13:16-17 (King James). Further, Butcher testified that he believed he was not permitted to participate in the hand scanner policy because he believed doing so would be a pledge of allegiance to the

Antichrist.  ECF No. 141 at 57-58.  This is more than substantial evidence to support the jury's findings on this issue.

Second, the defendants argue that there was insufficient evidence to support the jury's finding that Butcher was constructively discharged.  The defendants argue that the hand scanner policy had not been implemented before Butcher retired and that Butcher could have filed a grievance with his union, the United Mine Workers of America ("UMWA"), under its collective bargaining agreement with CONSOL to challenge, through arbitration, any attempt to discharge Butcher.

"[A]n employee is constructively discharged if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." Whitten v. Fred's, Inc., 601 F.3d 231, 248 (4th Cir. 2010) (internal quotation marks omitted).  The plaintiff must show: "(1) deliberateness of the employer's actions[;] and (2) intolerability of the working conditions." Id.  "[A] complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." Johnson v. Shalala, 991 F.2d 126, 132 (4th Cir. 1993); see also Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 324 (4th Cir. 2011).  Similarly, deliberateness may be shown by evidence that the employer was aware of reasonable

accommodations but did not offer them to the plaintiff.  See
Crabill, 423 F. App'x at 319-20, 324.

As discussed in more detail below, evidence of the collective
bargaining agreement's grievance procedure was irrelevant to a
determination of whether Butcher was constructively discharged.
The evidence showed that Butcher requested an accommodation to the
hand scanner policy, that the defendants had developed a way to
bypass the hand scanner for miners that were physically incapable
of scanning their hands, and that the defendants did not offer that
bypass method as an accommodation for Butcher.  Further, Butcher
met with CONSOL human resources personnel several times regarding
his request for an accommodation, but was repeatedly denied an
exception to the hand scanner policy.  Thus, there was sufficient
evidence for the jury to find that the defendants were aware of a
reasonable accommodation (the bypass method) but did not offer it
to Butcher after several requests for an accommodation.

2.  Substantial Evidence that CONSOL was Butcher's Employer

CONSOL argues that the EEOC failed to prove that it was
Butcher's employer because the EEOC failed to show that as a parent
company, CONSOL exercised excessive control over the employees of
Consolidation.

"A parent company is the employer of a subsidiary's personnel
only if it controls the subsidiary's employment decisions or so
completely dominates the subsidiary that the two corporations are

the same entity." Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir. 1987). Thus, "[i]f the parent company hired and fired the subsidiary employees, routinely shifted them between the two companies, and supervised their daily operations, it would be hard to find that the parent was not their employer." Id. at 981.

There was ample evidence in the record to support the jury's finding that CONSOL was Butcher's employer. The hand scanner policy, including its progressive discipline procedure, was created by CONSOL and given to its subsidiaries for implementation. ECF No. 153 at 18-19, 30-36, 69-70. Butcher's request for an accommodation was considered and denied by CONSOL's human resources personnel, Christopher Fazio ("Fazio") and Tom Hudson ("Hudson"). Fazio was the Human Resources Supervisor ("HR") at the Robinson Run Mine. ECF No. 141 at 166. His immediate HR supervisor was Tom Hudson, an HR manager at CONSOL. ECF No. 141 at 167-68. CONSOL's HR director, Samuel Johnson, approved Fazio and Hudson's decision to offer Butcher the option to scan his left hand palm up. ECF No. 142 at 31-32. Further, Butcher's retirement and benefits documents were issued by CONSOL's HR employees, ECF No. 141 at 169-72, and his employment records were maintained by CONSOL. ECF No. 141 at 172-73. Thus, there is substantial evidence that CONSOL was making employment decisions regarding Butcher, and the jury's finding that CONSOL was Butcher's employer is supported by substantial evidence.

The defendants' renewed motion for judgment as a matter of law is denied.

B.  <u>Motion for a New Trial</u>

Rule 59 provides courts with discretion to grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1).  A court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) "will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  <u>Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.</u>, 99 F.3d 587, 594 (4th Cir. 1996).  The first two grounds for a new trial require the court to make factual determinations, while the third ground requires a policy analysis under which the "judge's unique vantage point and day-to-day experience with such matters lend expertise." <u>Id.</u>

The defendants argue that this Court made various legal errors at trial.  This Court presumes that the defendants are arguing that those errors produced a judgment that "will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  <u>Id.</u>  The defendants also argue that the jury's damage award was excessive so as to make the judgment a miscarriage of justice.

1.  <u>Exclusion of Evidence Regarding the Collective Bargaining</u> <u>Agreement's Grievance and Arbitration Procedures</u>

Before trial, the EEOC filed a motion in limine to exclude all evidence regarding the grievance process contained in the United Mine Workers of America's ("UMWA") collective bargaining agreement with CONSOL, which allowed Butcher to file a grievance with the union and seek arbitration before he could be discharged. This Court deferred deciding the motion until trial. Each party's opening statements discussed the grievance process. Butcher then testified in part about the grievance process, and the defendants cross-examined him about it. This Court then granted the EEOC's motion, denied the defendants' motion for a mistrial, and gave a detailed cautionary instruction to the jury to disregard all mention of the grievance process because it was irrelevant. The defendants then moved for a mistrial. This Court denied that motion, concluding that the curative jury instruction would adequately prevent unfair prejudice to the defendants. The defendants argue that the evidence was relevant for several reasons, and that its exclusion prejudiced them because the jury was misled into believing that Butcher had no option but to retire.

First, the defendants argue that the EEOC had to show that Butcher had no option but to comply with the hand scanner policy or retire. However, the EEOC showed that the defendants <u>constructively</u> discharged Butcher, not that he was actually

discharged because of his religious objection to the hand scanner policy. As discussed above, an employee is "constructively discharged if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." _Whitten_, 601 F.3d at 248 (internal quotation marks omitted). This may be shown by evidence that the employer was aware of reasonable accommodations but did not offer them to the plaintiff. _See Crabill_, 423 F. App'x at 319-20, 324. Whether the defendants' enforcement of their progressive discipline policy would have resulted in Butcher's eventual discharge, even after arbitration through the grievance process, has no bearing on whether the defendants deliberately denied Butcher a religious accommodation. Thus, the grievance process is irrelevant to whether Butcher was constructively discharged.

Second, the defendants argue that the evidence was relevant to whether they provided a reasonable accommodation. The defendants argue that the grievance process showed the parties expected that the grievance process would be the means by which a reasonable accommodation would be created.

However, the evidence shows that Butcher's constructive discharge was complete before the grievance process would have applied to an attempt to discharge Butcher. The defendants refused to grant Butcher an accommodation before he could be discharged. Thus, the grievance process could not serve as part of the

12

defendants' attempt to provide a reasonable accommodation to
Butcher. To prove constructive discharge, a claimant is not
required to endure an intolerable work environment until their
employer attempts to discharge them. Whitten, 601 F.3d at 248. If
the claimant requested a religious accommodation, and the employer
was aware of available accommodations, but refuses to grant an
accommodation to the claimant, the claimant has been constructively
discharged. See Crabill, 423 F. App'x at 319-20, 324. The
claimant need not wait to be discharged for noncompliance with an
employment requirement that conflicts with his religious beliefs.

Even if Butcher waited until the defendants sought to
discharge him, filed a grievance, and the arbitrator ordered the
defendants to provide Butcher with a particular accommodation,
Title VII requires an employer to provide a reasonable
accommodation when requested by the employee, not to provide a
reasonable accommodation when ordered to do so by an arbitrator or
some other tribunal. Thus, Butcher's ability to file a grievance
if the defendants attempted to discharge him for failure to comply
with the hand scanner policy is completely irrelevant to the issue
of whether the defendants constructively discharged Butcher by
refusing to grant him a reasonable accommodation.

Third, the defendants argue that Butcher's right to
arbitration under the collective bargaining agreement was relevant
because Title VII claims may be arbitrated. While arbitration

provisions covering Title VII claims in collective bargaining agreements are enforceable, <u>see</u> <u>Austin v. Owens-Brockway Glass Container</u>, 78 F.3d 875 (4th Cir. 1996), such agreements must clearly and unmistakably state that those particular statutory rights are subject to mandatory arbitration. <u>Carson v. Giant Food, Inc.</u>, 175 F.3d 325, 331 (4th Cir. 1999).

The defendants concede that the collective bargaining agreement did not require arbitration of Title VII claims. Further, the UMWA filed a grievance on Butcher's behalf after he retired, but withdrew the grievance because it concluded that the collective bargaining agreement did not cover religious discrimination claims. ECF No. 68-1 at 127, 130, 134; ECF No. 68-15; ECF No. 68-10 at 104-28; ECF No. 68-16 at ¶¶ 4-5. Thus, the grievance process could not have resulted in Butcher getting an accommodation.

Even if Butcher's religious discrimination claim was arbitrable under the collective bargaining agreement, his claim would be ripe only after the defendants failed to provide a reasonable accommodation. So arbitrating a claim for failure to accommodate could never serve as an accommodation. The arbitration could serve only as a different forum for Butcher to bring his already ripe religious discrimination claim against the defendants.

Fourth, the defendants argue that the grievance process evidence was admissible to impeach Butcher's testimony that he had

no option but to comply or retire.  This argument fails because the grievance process did not contradict Butcher's statement.  Butcher stated that he believed his only options were to comply with the hand scanner policy, fail to comply and face discharge, or retire. ECF No. 141 at 88.  The fact that he could have filed a grievance before being threatened with discharge does not affect whether he felt the need to retire in the face of the defendants denying him a reasonable accommodation to the hand scanner policy.

Fifth, the defendants argues that the EEOC failed to object to the admission of the grievance process evidence by commenting to the jury on the grievance process in opening statements, by questioning Butcher about it, by failing to object to defense counsel's reference to it during opening statements, and by failing to object to its use in the defendants' cross-examination of Butcher.

However, the EEOC was not required to object to any portion of Butcher's testimony regarding the grievance process because it had already filed a motion in limine to exclude that evidence.  This Court held that motion under consideration until ruling on it after Butcher completed his testimony.  The EEOC did not waive its objection to the admissibility of evidence about the grievance process by complying with this Court's directions.

Finally, any probative value of the grievance process evidence was substantially outweighed by the risk of confusing the issues

and misleading jury.  <u>See</u> Fed. R. Evid. 403.  Such evidence likely would have misled the jury regarding an employer's obligations under Title VII, and likely would have confused the issues by injecting a factual question and speculation as to the potential outcome of any arbitration of Butcher's claim.  Thus, this Court properly excluded the grievance process evidence.

    2.  <u>Denial of Motion for Mistrial</u>

    The defendants moved for a mistrial after this Court granted the EEOC's motion in limine regarding the grievance process evidence.  This Court denied that motion, concluding that a curative jury instruction would adequately prevent unfair prejudice to the defendants.  This Court instructed the jury to disregard all mention of the grievance process because it was irrelevant.  The defendants argue that the exclusion of the grievance process evidence and the jury instruction to disregard that evidence prejudiced the defendants by "directly advising the Jury that defendants' position in opening statement[s] and in cross examination of the claimant were not relevant or supported by law." ECF No. 179 at 16.

    The exclusion of evidence alone is not a ground for a mistrial.  The jury is presumed to have followed this Court's curative instruction.  <u>Nichols v. Ashland Hosp. Corp.</u>, 251 F.3d 496, 501 (4th Cir. 2001).  This Court's curative instruction was neutral and appropriate, and the defendants fail to demonstrate

that they were unfairly prejudiced by this Court's exclusion of the irrelevant grievance process evidence.

### 3. Jury Instructions

The defendants argue that this Court erred in denying some of its proposed jury instructions. The defendants argue that this Court should have given these instructions because the defendants offered evidence from which the jury could draw a reasonable inference as to their theory of the case regarding each instruction. However, each of this Court's instructions were legally correct and substantially covered the defendants' proposed instructions.

Courts have "considerable discretion in choosing the specific wording of [jury] instructions." Figg v. Schroeder, 312 F.3d 625, 640 (4th Cir. 2002) (internal quotation marks omitted). A judgment may be reversed for failure to "give an instruction proposed by a party only when the requested instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired that party's ability to make its case." Noel v. Artson, 641 F.3d 580, 576-87 (4th Cir. 2011) (internal quotation marks omitted). Further a determination of whether an instruction, or failure to instruct, was prejudicial is "based on a review of the record as a whole." Id. (internal quotation marks omitted). "The test of adequacy of

instructions . . . is not one of technical accuracy in every detail." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987). Rather, it is a practical examination of "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Id.

  a. Proposed Instruction No. 2

The defendants argue that this Court denied the following part of their proposed Instruction No. 2:

> An employer need not provide an employee with his preferred accommodation, and there is no legal requirement that an employer choose any particular reasonable accommodation. So long as the employer has offered a reasonable accommodation, it has satisfied its duty under Title VII.

ECF No. 179 at 20-21. The defendants argue that this instruction should have been given because the defendants' defense theory was that they offered a reasonable accommodation in the form of allowing Butcher to scan his left hand palm up.

However, this Court's instruction included the defendants' proposed language:

> If you find by a preponderance of the evidence that the employer provided a reasonable accommodation to Mr. Butcher, your verdict shall be for the defendant employer. An employer need not provide an employee with his preferred accommodation, and there is no legal requirement that an employer choose any particular reasonable accommodation. So long as the employer has offered a reasonable accommodation, it has satisfied its duty under Title VII.

ECF No. 143 at 82 (emphasis added).  This instruction was legally correct and did not unfairly prejudice the defendants in any way.

      b.   <u>Proposed Instruction No. 5</u>

This Court denied the defendants' proposed Instruction No. 5, which provided:

> In reaching your verdict on the EEOC's religious discrimination claim, you should keep in mind that the law requires only that an employer not discriminate against an employee based on his religion.  The law does not require an employer to use good judgment, to make correct decisions, or even to treat its employees fairly. Title VII is not violated by the exercise of erroneous or even illogical business judgment. Therefore, in deciding the Plaintiff's discrimination claim, it is not your function to second-guess the employer's business decisions or act as a personnel manager, unless you find that the decisions were motivated, in whole or in part, by illegal religious discrimination.

ECF No. 179 at 21.  The defendants argue that the evidence showed that they exercised their business judgment in implementing the hand scanner policy, and that their proposed instruction would have allowed the jury to determine that the defendants had no discriminatory intent in implementing the policy, but did so to increase safety and save on payroll.

This Court gave the following instruction:

> In reaching your verdict on the EEOC's religious discrimination claim, you should keep in mind that the law requires only that an employer not discriminate against an employee based on his religion.  The law does not require an employer to make correct or fair decisions.  Therefore, in deciding the plaintiff's discrimination claim, it is not your function to substitute your judgment for that of the employer.

ECF No. 143 at 83. This instruction clearly and correctly stated the standard by which a jury should evaluate an employer's employment decisions. See <u>DeJarnette v. Corning, Inc.</u>, 133 F.3d 293, 298-99 (4th Cir. 1998) (noting that "when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct"); <u>Jiminez v. Mary Washington Coll.</u>, 57 F.3d 369, 376 (4th Cir. 1995) (noting that a court does not "sit as a 'super personnel council' to review" employment decisions (internal quotation marks omitted)). Further, it substantially covered the substance of the defendants' proposed instruction. Thus, the defendants were not unfairly prejudiced.

c. <u>Proposed Instruction No. 8</u>

The defendants argue that this Court erred in denying their proposed Instruction No. 8 regarding nominal damages, which provided: "If you return a verdict for the plaintiff, but find that the Plaintiff has failed to prove that Mr. Butcher suffered any damages, then you must award the plaintiff the nominal amount of $1.00." ECF No. 179 at 22.

This Court provided two sets of instructions to the jury on compensatory damages. Initially, this Court instructed the jury that:

> Compensatory damages are distinct from the amount of wages that Mr. Butcher would have earned, either in the past or the future, if he had continued in employment with defendants. Under the applicable law, the

> determination of lost wages is for this Court to
> determine at a later time and, therefore you will not be
> asked to decide lost wages.  You should not consider the
> issue of lost wages in your deliberations.
>
> . . .
>
> The mere fact that I have given you instructions on
> the law of the recovery of damages does not imply or
> suggest that the Court believes that any damages are due.
> Whether or not damages are due is for you to decide.
> Instructions as to the measure of damages are only given
> for your guidance in the event that you should find in
> favor of the plaintiff from a preponderance of the
> evidence in the case.

ECF No. 143 at 91.  This Court also instructed the jury that: "If

you reach a certain point in the verdict, there is a line for you

to state, if applicable, the amount of compensatory damages that

you have found."  ECF No. 143 at 98.  After the jury returned the

verdict form stating compensatory damages as "salary plus bonus &

pension, court cost," ECF No. 125-2, the EEOC requested that this

Court reinstruct the jury concerning compensatory damages and

direct the jurors to continue deliberations.  The defendants argued

that this Court should accept the verdict as an award of no

compensatory damages, or to instruct the jury on nominal damages.

This Court then reminded the jury that lost wages and similar

equitable damages were to be determined by the Court not the jury,

and asked the jury to "return to the jury room and considering the

instructions which you have and considering all the instructions,

determine whether or not you would award compensatory damages, _if_

_any_."  ECF No. 143 at 112-14 (emphasis added).  This Court also

noted that the direction to continue deliberations did "not indicate [the Court's] feelings as to the amount of damages or whether . . . compensatory damages should be awarded." Id. at 113-14. After further deliberation, the jury returned a verdict for $150,000 in compensatory damages. As requested by the defendants, this Court then asked the jury if its award "include[d] any amount for salary, bonus, pension, or court costs," and the jury stated that it did not include such damages. Id. at 118.

The defendants argue that the jury's first verdict indicates that it found no actual damages. Because this Court refused to give a nominal damages instruction, the defendants argue, the jury's initial award indicated that it found no compensatory damages.

However, this Court's initial instruction to the jury correctly stated the law on determining compensatory damages, and correctly instructed the jury that it was not to consider lost wages. The instructions adequately informed the jury that it should not award damages if it did not find a basis for damages. Further, this Court's supplemental instructions in reinstructing the jury accurately reminded the jury that it should not award compensatory damages if it did not find a basis for them, and the jury specifically stated that its second award did not "include any amount for salary, bonus, pension, or court costs." ECF No. 143 at 118. Thus, in light of the entire record, any inaccuracy in this

Court's damages instructions did not unfairly prejudice the defendants because the jury understood that it would not award compensatory damages if it did not find a basis for them.

### d. Proposed Supplemental Instruction No. 4

The defendants argue that this Court erred in denying the defendants' proposed Supplemental Instruction No. 4, which provided:

> An employee may not be unreasonably sensitive to his working environment. Every job has its frustrations, challenges and disappointments; these are inherent in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his coworkers . . . . A reasonable employee should pursue all internal grievance procedures before making the decision to resign. Constructive discharge is difficult to show if the alleged intolerable conditions lasted only for a short time. An employee is expected to remain employed while seeking redress of a grievance.

ECF No. 179 at 23. The defendants argue that the EEOC failed to prove constructive discharge because Butcher abruptly retired after turning down an accommodation, without pursuing other options available to him, and that the evidence tended to show that Butcher was unreasonably sensitive to his working environment.

This Court gave the following instruction regarding intolerability of working conditions:

> Intolerability of the working conditions is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign. An employee is not guaranteed a working environment free from stress. It is the obligation of an employee not to assume the worst and not to jump to

23

conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.

ECF No. 143 at 86. This Court's instruction correctly stated the standard for determining whether working conditions were intolerable. See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (concluding that an employee cannot be unreasonably sensitive to his work environment). The substance of the defendants' proposed instruction that is supported by case law was covered by this Court's proper instruction, and the defendants were not unfairly prejudiced.

### 4. Refusal to Accept the Initial Jury Verdict

The jury form instructed the jury to "[s]tate the amount of compensatory damages you award," and the jury returned a verdict stating "salary plus bonus & pension, court cost." ECF No. 125-2. The EEOC requested that this Court reinstruct the jury concerning compensatory damages and direct the jurors to continue deliberations. The defendants argued that this Court should accept the verdict as is, and that the jury had awarded no compensatory damages. This Court noted that its initial instructions to the jury stated that compensatory damages were "distinct from the amount of wages that [] Butcher would have earned . . . if he had continued in employment with [the] defendants," and that the jury "should not consider the issue of lost wages." ECF No. 143 at 91. This Court reminded the jury that lost wages and similar damages

were to be determined by the Court not the jury, and asked the jury to "return to the jury room and considering the instructions which you have and considering all the instructions, determine whether or not you would award compensatory damages, if any." ECF No. 143 at 112-14. This Court also noted that the direction to continue deliberations did "not indicate [the Court's] feelings as to the amount of damages or whether . . . compensatory damages should be awarded." ECF No. 143 at 113-14. After further deliberation, the jury returned a verdict for $150,000 in compensatory damages. As requested by the defendants, this Court then asked the jury if its award "include[d] any amount for salary, bonus, pension, or court costs," and the jury stated that it did not award such damages. ECF No. 143 at 118.

The defendants argue that this Court erred under Rule 49(b) in directing the jury to continue deliberations on compensatory damages after returning the first verdict form. They argue that the first verdict form indicated that the jury intended to award no compensatory damages, that such a finding was not inconsistent with a finding of liability, and that this Court could not direct further deliberations without calling for an inconsistent verdict.

Under Federal Rule of Civil Procedure 49(b)(3), if the jury's answers to special interrogatories are consistent with each other but inconsistent with the general verdict, the court may: (a) enter the judgment in accordance with the answers; (b) direct the jury to

25

further consider its answers and verdict; or (c) order a new trial. Fed. R. Civ. P. 49(b)(3). Similarly, if the jury's answers are inconsistent with each other and the general verdict, the court may direct the jury to continue deliberations, or order a new trial. Fed. R. Civ. P. 49(b)(4). But, the court also has discretion to determine whether a "verdict reflects jury confusion or uncertainty [and] . . . has a duty to clarify the law governing the case and resubmit the verdict for a jury decision." Jones v. Southpeak Interactive Corp. of Del., 777 F.3d 658, 673-74 (4th Cir. 2015) (internal quotation marks omitted). Further, a jury's failure to fully complete a verdict form according to the court's instructions may not result in acceptance of the verdict, but should be dealt with in the court's discretion. Lacurci v. Lummus Co., 387 U.S. 86, 87-88 (1967).

Based on this Court's instructions to the jury and its initial damages award, this Court determined that the jury was confused regarding this Court's instructions on damages and that the initial award did not complete the verdict form as to the question of what, if any, damages should be awarded. Because of this confusion and failure to complete the verdict form, this Court had a "duty to clarify the law governing [damages] . . . and resubmit the verdict for a jury decision." Jones, 777 F.3d at 673-74 (internal quotation marks omitted). Further, after the jury returned from further deliberations and awarded $150,000 in damages, the jury

expressly stated that these damages did not include lost wages or similar damages. Thus, the record as a whole indicates that the jury initially did not understand the instructions on damages, was reinstructed, deliberated further, and returned a verdict in accordance with the law. This Court did not err in reinstructing the jury and directing further deliberations.

5. Exclusion of Evidence Relating to Butcher's Search for Employment

At trial, Butcher testified about the economic strain his early retirement caused. He also testified about how being a coal miner was important to him financially and spiritually, as he felt that he was a sort of pastor to the miners at the Robinson Run mine. ECF No. 181 at 104-05. During their cross-examination of Butcher, the defendants sought to ask the following: "Now, the one thing we know is since you are receiving your pension, if you went back and worked in the coal industry, your pension would be suspended until you stopped doing that and then you would receive pension again, right?" ECF No. 141 at 131. This Court excluded that evidence as irrelevant, concluding that Butcher was not required to seek employment in the coal mining industry to mitigate his early retirement and that any financial aspect of such testimony was irrelevant as reserved for this Court's later determination of back pay damages. ECF No. 141 at 132-33. The defendants now argue that their question was relevant to impeach

Butcher's testimony about the importance to him of being a coal miner.

Whether Butcher would have to forego his pension benefits if he took another coal mining job was not relevant to impeach his testimony about the financial and emotional strain that early retirement put on him. Nor was it relevant to impeach whether he searched for employment after his retirement. Further, the question would not impeach Butcher's testimony that being a coal miner was spiritually important to him because he felt that he was a kind of pastor to the miners at the Robinson Run mine. The question sought to elicit only testimony about Butcher's financial incentives for seeking or not seeking employment in a coal mine. The issue of financial mitigation was reserved for this Court's determination of back pay damages. Thus, the testimony was irrelevant to whether Butcher satisfied his duty to mitigate, did not impeach his testimony regarding emotional harm caused by the financial strain and spiritual loss of his job, and the risk of confusing the jury about financial specifics regarding mitigation substantially outweighed any probative value of the testimony.

Even if the testimony was relevant, the defendants failed to demonstrate that it was of such importance that its exclusion resulted in a manifestly unjust verdict. Viewing the record as a whole, the jury was not substantially swayed to enter a verdict for the plaintiff because it did not hear Butcher's excluded testimony.

See <u>Taylor v. Va. Union Univ.</u>, 193 F.3d 219, 235 (4th Cir. 1999) (concluding that evidentiary errors affect a party's substantial rights if the judgment was "substantially swayed by the error[s]" (alteration in original) (internal quotation marks omitted)).

      6.  <u>Excessive Verdict</u>

The defendants ask this Court to order a new trial <u>nisi remittitur</u>, arguing that the award of $150,000 in compensatory damages was unsupported by the evidence. "Under Rule 59(a) of the Federal Rules of Civil Procedure, a court may order a new trial <u>nisi remittitur</u> if it concludes that a jury award of compensatory damages is excessive." <u>Jones</u>, 777 F.3d at 672 (internal quotation marks omitted). A court should order a new trial <u>nisi remittitur</u> if "the jury's verdict is against the weight of the evidence or based on evidence which is false." <u>Sloane v. Equifax Info. Servs., LLC</u>, 510 F.3d 495, 502 (4th Cir. 2007) (internal quotation marks omitted). Whether to grant such a new trial is "entrusted to the sound discretion of the district court." <u>Id.</u> (internal quotation marks omitted).

Here, the jury's award was supported by Butcher's testimony and his wife's testimony about the effect of his retirement on him and upon their household. Mrs. Butcher testified about how the family's relationship was detrimentally affected by the financial and emotional strain of Butcher's early retirement. ECF No. 142 at 22-24. She also testified that her husband became depressed and

29

lost thirty to thirty-five pounds. ECF No. 142 at 23. Butcher testified about being angry and about his desperation to find another job to support his family. ECF No. 141 at 103-06. He also testified about the importance of his relationships with the miners at the Robinson Run mine, stating how he believed he was a sort of pastor to the miners there and that he had lost the relationships he developed during his thirty-five year tenure there. ECF No. 141 at 103-06. Because the award was supported by the evidence, it is not excessive.

The defendants further argue that under Jones v. SouthPeak Interactive Corp., 777 F.3d 658, 672-73 (4th Cir. 2015), this Court should have compared the damages award to awards in similar cases in determining if a remittitur is warranted. The defendants argue that the verdict should be remitted to no more than $20,000.

However, Jones simply approved the use of the comparative approach in determining whether a damage award was excessive, but did not require such analysis. See Jones, 777 F.3d at 673 (noting that "[a]fter concluding that the evidence supported an award for emotional distress, the court compared the jury's damages assessment to awards in comparable cases," and that this "was a sound approach"). Further, the defendants simply assert that this Court should apply the comparative approach, but do not provide this Court with any comparable cases or authority to determine whether the damages award here is excessive. Because the evidence

30

supports the jury's damage award, this Court refuses to order a new trial <u>nisi remittitur</u>.

C. <u>Motion to Amend Findings and Conclusions Regarding Back Pay and Front Pay Damages</u>

    1. <u>Mitigation Findings and Conclusions</u>

The defendants argue that this Court's findings regarding Butcher's efforts to mitigate damages are not supported by the evidence. Specifically, the defendants argue that this Court did not give enough weight to evidence that coal mining jobs were available to Butcher and that he took a job in a different industry to avoid losing his pension benefits. For the following reasons, this Court's findings are supported by substantial evidence.

A Title VII claimant is presumptively entitled to back pay unless the defendant shows that the claimant did not exert reasonable efforts to mitigate his damages. <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 421 (1975). The defendant has the burden of showing that the claimant was not "reasonably diligent in seeking and accepting new employment substantially equivalent to that from which he was discharged." <u>Brady v. Thurstone Motor Lines, Inc.</u>, 753 F.2d 1269, 1273 (4th Cir. 1985). To fulfill his duty to mitigate damages, a claimant "need not go into another line of work, accept a demotion, or take a demeaning position." <u>Id.</u> at 1274 (internal quotation marks omitted) (quoting <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231 (1982)). However, "after an extended

period of time searching for work without success, a claimant must consider accepting suitable lower paying employment in order to satisfy the duty to mitigate damages." Id. at 1275. Whether a claimant was reasonably diligent depends upon: (1) the economic climate; (2) the claimant's skills and qualifications; (3) whether the claimant received a substantially equivalent job offer; and (4) the claimant's age and personal limitations. Lundy Packing Co. v. Nat'l Labor Relations Bd., 856 F.2d 627, 629 (4th Cir. 1988); EEOC v. CTI Global Solutions, Inc. 815 F. Supp. 2d 897, 914-15 (D. Md. 2011). A claimant may, in good faith, accept a lower paying job or a job in another field if his search for similar employment proves futile. Brady, 753 F.2d at 1275.

This Court found that Butcher reasonably mitigated his damages by accepting a lower-paying position in the construction or heavy equipment industries. This Court found that the rural economic climate in which Butcher sought employment likely did not offer many high-paying employment opportunities, and that Butcher needed to support his wife and two grandchildren when he was not yet receiving payments from his retirement benefits. While Butcher has only a high school education, he was highly skilled in the coal mining industry, qualifying him for high-paying positions in that industry. However, this Court also found that Butcher's coal mining skills did not transfer directly to high-paying employment in other industries, thus, limiting his options for substantially

similar employment.  Although Butcher took a position outside of the mining industry with about a sixty percent income decrease, Butcher searched for mining jobs at UMWA mines, attended job fairs in the mining industry and other industries, and applied for a mining job.  After those attempts failed, Butcher reasonably took a position in the construction or heavy machinery industry with lower pay to obtain income at a time when he had none.

The defendants argue that this Court did not give enough weight to evidence that there were job openings at the CONSOL Federal No. 2 mine.  However, these openings were available <u>after</u> Butcher obtained steady employment.  A claimant who "exercised reasonable diligence to find similar employment, [was] . . . unable to do so, and then accepts a lower paying job" is not required to "continue to search for higher paid employment."  <u>Brady</u>, 753 F.2d at 1274.  Moreover, the defendants failed to show that Butcher would have received substantially similar pay at the Federal No. 2 mine, as the evidence indicated that the pay rate could have varied downward by at least fifty percent.  Thus, the defendants failed to carry their burden to show that Butcher failed to mitigate his damages.

     2.  <u>Lost Pension Benefits</u>

This Court awarded Butcher back pay and front pay damages, including lost pension benefits.  This Court did not offset these damages with the pension benefits Butcher had received since his

retirement in 2012. The defendants argue that this Court's inclusion of lost pension benefits in front pay damages was erroneous for two reasons. First, the defendants argue that this Court erred in finding that the pension benefits that Butcher has already received since his retirement were from a collateral source and should not offset damages. Second, the defendants ask this Court to reconsider its calculation of front pay damages, arguing that the Court's front pay damages award results in a windfall for Butcher.

### a.  The Collateral Source Rule

A defendant may offset damages with compensation received by the plaintiff for their injury, but the defendant bears the burden of showing that it is entitled to an offset to damages. Sloas v. CSX Transp., Inc., 616 F.3d 380, 389 (4th Cir. 2010). However, compensation a plaintiff receives from a collateral source may not offset damages. Id. "That a benefit comes from the defendant . . . does not itself preclude the possibility that it is from a collateral source." Id. (internal quotation marks omitted). "[W]hether a given benefit is derived from a collateral source 'depend[s] . . . upon the exact nature of the compensation received.' If the [defendant] provides a benefit to the plaintiff 'specifically to compensate him for his injury,' the benefit does not constitute a collateral source," and may be used to offset damages. Id. at 390 (second alteration in original) (citation

omitted). "But if the [defendant] does not provide the benefit to the plaintiff as compensation for his or her injury, the benefit is from a collateral source and 'should not be offset against the sum awarded . . . nor considered in determining that award.'" <u>Id.</u> Thus, a benefit is "from a collateral source unless it results from payments made by the employer in order to indemnify itself against liability." <u>Id.</u> (internal quotation marks omitted). Moreover, pension benefits are generally considered to be a collateral source even if the employer contributed to the fund, because pensions are "a term of employment rather than an attempt by the employer to indemnify itself against liability." <u>Russo v. Matson Navigation Co.</u>, 486 F.2d 1018, 1020 (9th Cir. 1973); <u>see also</u> <u>U.S. Can Co. v. Nat'l Labor Relations Bd.</u>, 254 F.3d 626, 634 (7th Cir. 2001) (noting that an "employer would indeed gain from its wrong – and the employee would lose out – if the employer were allowed to subtract, from the back-pay obligation, pension and welfare benefits that serve as deferred compensation for work performed"); <u>EEOC v. O'Grady</u>, 857 F.2d 383, 391 (7th Cir. 1988) (noting that pension benefits are a collateral source because they "may be viewed as earned by the claimants"); <u>McDowell v. Avtex Fibers</u>, 740 F.2d 214, 217 (3d Cir. 1984) (concluding that pension payments were a collateral source because they "are designed to serve social policies independent of those served by back pay awards"), <u>vacated and remanded on other grounds</u>, 469 U.S. 1202 (1985); <u>Haughton v.</u>

Blackships, Inc., 462 F.2d 788, 790 (5th Cir. 1972) (concluding that a seaman's pension was a collateral source and should not be used to offset damages owed by the employer for personal injury).

Under the standard set out in Sloas v. CSX Transportation, Inc., 616 F.3d 380, 389 (4th Cir. 2010), this Court determined that the pension benefits Butcher received after retiring were from a collateral source.  This is because the pension was a term of Butcher's employment with the defendants as governed by the UMWA's collective bargaining agreement with CONSOL.  Although CONSOL contributed funds to the pension, it was "a term of [Butcher's] employment rather than an attempt by [CONSOL] to indemnify itself against liability." Russo, 486 F.2d at 1020.  The defendants argue that this case is factually distinguishable from Sloas, but this is beside the point.  Applying the standard pronounced in Sloas, Butcher's pension is a collateral source.  Sloas does not require that all collateral sources be factually analogous to the benefits that court examined; it requires that the benefit not be designed to indemnify the defendant against the type of liability at issue. Sloas, 616 F.3d at 390.  Butcher's pension was designed to provide for his retirement, not to indemnify the defendants against Title VII claims.

Nevertheless, the defendants argue that this Court erred in applying Sloas because an earlier case, Fariss v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985), states that pension benefits

already received must offset damages. However, there is no question in the Fourth Circuit that <u>Sloas</u> provides the standard for determining whether a benefit is a collateral source. <u>See</u> <u>Hyland v. Xerox Corp.</u>, 481 F. App'x 819, 824-25 (4th Cir. 2012) (reaffirming and applying <u>Sloas</u>). <u>Fariss</u> does not purport to apply the collateral source rule. In fact, the only mention of the rule is in a footnote, wherein the court states that "[c]ollateral benefits are those received from a source distinct from the employer; they are not offset because they do not discharge an obligation of the employer, but serve an independent social policy," <u>Fariss</u>, 769 F.2d at 966 n.10, a statement of the rule that was rejected by the court in <u>Sloas</u>. <u>See</u> 616 F.3d at 389 ("That a benefit comes from the defendant . . . does not itself preclude the possibility that it is from a collateral source." ).

Under <u>Sloas</u> a pension is better understood to be from a collateral source in a Title VII case because the employer "does not provide the benefit to the plaintiff as compensation for his or her injury," <u>id.</u>, but is providing a contractual retirement benefit that the employee was entitled to regardless of the Title VII violation. This is in accord with other jurisdictions that have determined that pensions are from a collateral source. <u>See</u> <u>U.S. Can Co.</u>, 254 F.3d at 634 (noting that an "employer would indeed gain from its wrong – and the employee would lose out – if the employer were allowed to subtract, from the back-pay obligation,

pension and welfare benefits that serve as deferred compensation for work performed"); O'Grady, 857 F.2d at 391 (noting that pension benefits are a collateral source because they "may be viewed as earned by the claimants"); McDowell, 740 F.2d at 217 (concluding that pension payments were a collateral source because they "are designed to serve social policies independent of those served by back pay awards"), vacated and remanded on other grounds, 469 U.S. 1202 (1985); Russo, 486 F.2d at 1020 (concluding that a pension was a collateral source because it was "a term of employment rather than an attempt by the employer to indemnify itself against liability"); Haughton, 462 F.2d at 790 (concluding that a seaman's pension was a collateral source and should not be used to offset damages owed by the employer for personal injury).

  b. <u>Whether the Front Pay Damages Award Constitutes a Windfall for Butcher</u>

  With the above understanding of the collateral source rule, <u>Fariss</u> is actually about preventing a plaintiff from receiving a windfall. "The purpose of the collateral source rule is not to prevent the plaintiff from being overcompensated but rather to prevent the [defendant] from paying twice." O'Grady, 857 F.2d at 389 (internal quotation marks omitted). "Indeed, its most obvious effect is that, in the interest of other social policies, it allows plaintiffs to be made more than whole for wrongs committed against them." Id. at 390. But, it is within a court's discretion to

determine whether to deduct a collateral source from a back pay award to prevent a windfall for the plaintiff. See id. (noting that "it is clear that a district court has discretion to deduct or not deduct [pension benefits] from an ADEA back pay award"). Thus, the question becomes: How does Fariss inform a district court in determining whether it should deduct pension benefits from a back pay award?

In Fariss, the district court offset the plaintiff's back pay damages with the lump-sum pension payment he received after early retirement because that pension was greater than any damages the plaintiff would have received. Fariss, 769 F.2d at 963-64. Had the plaintiff not been forced into retirement, he would not have received his pension at all because he had declined a survivorship option for his pension benefits. Id. at 963. Thus, a failure to offset the plaintiff's damages with his pension benefits would have resulted in a windfall for him, as he received his pension only because of his early retirement and his pension was far greater than his back pay damages. Id. at 966. Here, Butcher was entitled to his pension benefits regardless of whether he retired early. The amount of benefits he has received since his early retirement in 2012 do not come close to being greater than Butcher's back pay and front pay damages excluding lost pension benefits, which total $361,544.57. Including Butcher's lost pension in his front pay damages without offsetting for the pension benefits he has already

received results in $60,113.48 in additional front pay damages, hardly a windfall. Thus, this Court finds that not offsetting Butcher's damages with the pension benefits he has already received will not result in a windfall under Fariss.

The defendants also ask this Court to reconsider its back pay and front pay damages calculation, arguing that this Court did not give enough weight to their expert witness Dr. Homayoun Hajiran, Ph.D., M.B.A. However, Dr. Hajiran's calculation of Butcher's back pay and front pay damages was based on an offset of the amount of pension benefits Butcher has received since retiring. Because this Court finds that those benefits are from a collateral source, it finds that Dr. Hajiran's calculations are less appropriate than the EEOC's expert witness's calculations. The defendants' motion for reconsideration is denied.

## III. Conclusion

For the foregoing reasons, the defendants' renewed motion for judgment as a matter of law, motion for a new trial, and motion to amend this Court's findings and conclusions (ECF No. 178) are DENIED. Further, this Court notes that it previously entered judgment in this civil action under Rule 58 on August 25, 2015. See ECF No. 164.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     February 9, 2016


                                   /s/ Frederick P. Stamp, Jr.
                                   FREDERICK P. STAMP, JR.
                                   UNITED STATES DISTRICT JUDGE